# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

LYNWOOD C. TAYLOR,               )
                                 )
            Petitioner,          )
      v.                         )        Civil Action No. 12-1010-GMS
                                 )
G.R. JOHNSON, Warden, and        )
ATTORNEY GENERAL OF THE          )
STATE OF DELAWARE,               )
                                 )
            Respondents.         )

_____

Lynwood C. Taylor. *Pro se* petitioner.

Karen V. Sullivan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

_____

## MEMORANDUM OPINION

August 25, 2015
Wilmington, Delaware

Sleet, District Judge

Pending before the court is an application for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 ("petition") filed by petitioner Lynwood C. Taylor ("Taylor"). (D.I. 1) The State

filed an answer in opposition. (D.I. 16) For the following reasons, the court will deny the

petition as time-barred by the one-year limitations period prescribed in 28 U.S.C. § 2244.

## I.   BACKGROUND

As recited by the Delaware Supreme Court in Taylor's direct appeal, the facts leading up to

his arrest and conviction are as follows:

> The victim, who was Taylor's daughter, was born on June 7, 1988. In 1999, Taylor and
> the victim's mother divorced when the victim was in the sixth grade. The victim
> continued to live with Taylor in Georgetown, Delaware until October 2003. At the trial
> she testified that during that period Taylor raped her repeatedly, often several times a
> year.
>
> On April 3, 2007, the Delaware State Police arrested Taylor, who was later charged with
> six counts of Rape in the First Degree, one count of Continuous Sexual Abuse of a Child,
> one court of Endangering the Welfare of a Child and one count of Terroristic
> Threatening. Thereafter, the victim was interviewed by authorities, twice by the
> Children's Advocacy Center ("CAC") and once by the police.
>
> Trial was originally scheduled for September 11, 2007, but was continued at the State's
> request to enable it to retain an expert witness. Trial was rescheduled to November 7,
> 2007, and later, was finally set for December 12, 2007.
>
> The victim kept two journals. One was a personal journal (the "first journal"); the other
> was a notebook that she and her then-boyfriend passed back and forth to one another (the
> "second journal"). The second journal contained entries with corroborating facts related
> to three of the rapes. In March 2007, when the investigating detective asked the victim if
> she had any journals or similar items, she turned over only the first journal. The victim
> did not initially reveal the second journal, because she wanted to keep it private. She did
> not turn over the second journal until the eve of trial, when she met with the prosecutor. It
> was not until the December 11, 2007 pre-trial conference that the defense was first
> informed of the existence of the second journal (totaling 128 pages).
>
> Taylor requested a continuance of the trial to afford him time to read and digest the newly
> disclosed second journal, to prepare for trial and to evaluate the effect of that document
> on trial strategy, plea offers, and the defense's case-in-chief. Although the Superior Court
> did not change the trial date, it postponed the State's case-in-chief until the next morning.

That postponement gave Taylor one day to review the journal and prepare to respond to the State's case-in-chief. Jury selection and opening statements began later that day.

The next morning, after having reviewed the second journal, Taylor moved to suppress it, but did not renew his motion for a continuance. The Superior Court denied the motion to suppress and the trial continued for four days, with both the victim and Taylor testifying. Repeated reference was made to the second journal. At the conclusion of the trial, the jury convicted Taylor on all charges, except the Terroristic Threatening charge, which had been previously dismissed.

*Taylor v. State*, 982 A.2d 279, 280-81 (Del. 2008).

On February 15, 2008, the Superior Court sentenced Taylor to the minimum mandatory 115 years in prison. (D.I. 16 at 2) Taylor appealed. The Delaware Supreme Court affirmed his convictions and sentence on December 24, 2008, and then denied reargument on January 20, 2009. *See Taylor*, 982 A.2d at 285.

On June 25, 2009, Taylor filed a motion for new trial, which the Superior Court denied on August 21, 2009. (D.I. 15, Del. Super. Ct. Crim. Dkt. at Entry Nos. 61, 62) Taylor filed a motion for reargument on November 10, 2009, which the Superior Court denied as untimely on November 12, 2009. (D.I. 15, Del. Super. Ct. Crim. Dkt. at Entry Nos. 68, 69)

On December 2, 2009, Taylor filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion). (D.I. 15, Del. Super. Ct. Crim. Dkt. at Entry No. 70) The Superior Court denied the motion December 8, 2009, and Taylor appealed. (D.I. 15, Del. Super. Ct. Crim. Dkt. at Entry No. 71, 72) The Delaware Supreme Court remanded the case to the Superior Court to expand the record. (D.I. 15, Del. Super. Ct. Crim. Dkt. at Entry No. 78) After additional briefing, the Superior Court again denied relief. (D.I. 15, Del. Super. Ct. Crim. Dkt. at Entry No. 88) The Delaware Supreme Court affirmed the Superior Court's judgment on March 1, 2011. *See Taylor v. State*, 15 A.3d 318 (Table), 2011 WL 721517 (Del. Mar. 1, 2011).

Taylor filed the instant habeas petition in July 2012 asserting the following eight grounds for relief: 1) the victim's trial testimony contained inconsistencies; 2) there was insufficient evidence to support his convictions; 3) there was a discovery violation when the State disclosed a second diary maintained by the victim on the day trial began; 4) a letter the victim sent to him after the trial is new evidence supporting his actual innocence, not simply impeachment evidence; 5) his right to a fair and speedy trial was violated because eight months elapsed between his arrest and his trial; 6) his *Miranda* rights were violated because the police officer did not read the *Miranda* warning upon arrest; 7) his right to effective assistance of counsel was violated when his trial counsel did not raise a *Miranda* violation claim; and 8) his right to effective assistance of counsel was violated when his trial counsel: a) failed to raise lack of sufficiency of the evidence; b) failed to introduce as evidence Taylor's own diary; c) failed to prepare for trial "when [Taylor] was not allowed to go to work or church;" and d) kept changing the questions he was going to ask Taylor at trial.

The State filed an answer in opposition, alleging that the petition should be denied as time-barred or, alternatively, as meritless. (D.I. 16)

## II.    ONE YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and habeas petitions filed in federal courts after this date must comply with the AEDPA's requirements. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Taylor's petition, filed in 2012, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh*, 521 U.S. at 336. Taylor does not allege, and the court does not discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Thus, the one-year period of limitations in this case began to run when Taylor's conviction became final under

§ 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). The ninety-day period for filing a petition for certiorari with the United States Supreme Court runs from the entry of the state court judgment, not from the issuance date of the state court's mandate. *See* Sup. Ct. R. 13(1) & (3).

In this case, the Delaware Supreme Court affirmed Taylor's convictions on January 20, 2009, and he did not file a petition for a writ of certiorari in the United States Supreme Court.

4

As a result, Taylor's convictions became final on April 21, 2009, which means that he had until April 21, 2010 to timely file his petition.

Taylor did not file the instant § 2254 petition until July 27, 2012,[1] more than two years after the expiration of AEDPA's statute of limitations. Therefore, the petition is time-barred, unless the limitations period can be statutorily or equitably tolled. *See Holland v. Florida*, 560 U.S. 631, 645 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2)(statutory tolling). The court will discuss each doctrine in turn.

## A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed application for state collateral review tolls AEDPA's limitations period during the time the application is pending in the state courts, including any post-conviction appeals, provided that the application is filed during AEDPA's one-year limitations period. *Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000).

Here, sixty-five days of AEDPA's limitations period had already expired when Taylor filed his motion for new trial on June 25, 2009. The Superior Court denied the motion on August 21, 2009, and Taylor did not appeal that decision. Therefore, Taylor's motion for new trial tolled the limitations period from June 25, 2009 through September 21, 2009, which includes the thirty-day appeal period.[2]

The limitations clock started to run again on September 22, 2009, and ran another seventy days until Taylor filed his Rule 61 motion on December 2, 2009. The Superior Court denied the

---

[1] Pursuant to the prisoner mailbox rule, the court adopts as the filing date July 27, 2012, which is the date Taylor signed the petition. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003)(the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

[2] Although Taylor filed a motion for reargument on November 10, 2009, that motion does not statutorily toll the limitations period because the Superior Court denied it as untimely.

Rule 61 motion, and Taylor appealed. Thus, the Rule 61 motion tolled the limitations period from December 2, 2009, through March 1, 2011, the date on which the Delaware Supreme Court affirmed the Superior Court's decision.

Based on the foregoing, 135 days of AEDPA's limitations period had already expired when the limitations clock started to run again on March 2, 2011. The limitations clock ran the remaining 230 days without interruption until the limitations period expired on October 18, 2011. Hence, the instant petition must be dismissed as time-barred, unless equitable tolling applies.

## B. Equitable Tolling

In very rare circumstances, the one-year limitations period may be tolled for equitable reasons when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (emphasis added). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.*; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). Consistent with these principles, the Third Circuit has explained that equitable tolling of AEDPA's limitations period may be appropriate in the following circumstances:

(1) where the defendant (or the court) actively misled the plaintiff;
(2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones*, 195 F.3d at 159; *Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Liberally reading Taylor's petition, he appears to allege that equitable tolling is warranted because he is dyslexic, he does not know how to use a typewriter, and he is actually innocent.

6

The court is not persuaded. First, the courts that have considered whether a petitioner's dyslexia constitutes an extraordinary circumstance have uniformly held that a prisoner's dyslexia or a learning disability, standing alone, does not justify equitable tolling AEDPA's limitations period. *See Carvell v. Reilly*, 2015 WL 631995, at \*3 (D.N.H. Feb. 13, 2015)(collecting cases); *Snyder v. Secretary, DOC*, 2015 WL 439306, at \*11 ("being dyslexic does not constitute an impairment sufficient to render a petitioner incapable of making a timely application.") The court finds the reasoning in these decisions persuasive.

Second, the fact that Taylor filed a handwritten habeas petition asserting eight grounds for relief demonstrates that his inability to use a typewriter does not warrant equitable tolling.

As for Taylor's assertion of actual innocence, in *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013), the Supreme Court held that a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. However, the *McQuiggin* Court cautioned that "tenable actual-innocence gateway pleas are rare," and a petitioner only meets the threshold requirement by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 1928. An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In the Third Circuit, evidence is "new" for the purposes of the *Schlup* standard only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence,[3] except in situations where that evidence was not

---

[3]The circuits addressing the issue are split over what constitutes "new" evidence for *Schlup* purposes. The Eighth Circuit's interpretation of "new" evidence corresponds with the Third

discovered due to the ineffective assistance of trial counsel. *See Houck v. Stickman*, 625 F.3d 88, 93-94 (3d Cir. 2010). In turn, when determining if a petitioner's new evidence shows it is "more likely than not that no reasonable juror would have convicted him," a court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006). Finally, a court "may consider how the timing of the submission [of actual innocence] and the likely credibility of the affiant[] bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332; *see also McQuiggin*, 133 S.Ct. at 1935.

In this case, Taylor contends he is actually innocent because no DNA evidence, any other physical evidence, or third party eyewitness testimony was introduced at trial. This "lack" of physical evidence was clearly known during his trial. Therefore, it does not constitute "new" evidence for the purposes of the *Schlup* standard.

To the extent the victim's post-trial letter to Taylor should be treated as additional support for his equitable tolling argument, it does not aid Taylor in his quest to toll the limitations period. In the letter, the victim asserts, "Please forgive me. I'm sorry I lied." (D.I. 15, App. To Appellant's Op. Br. in *Taylor v. State*, Case No. 2,2010, at A233) Notably, however, the victim does not say that she lied about the rape and, from what the court can tell, the letter has not been verified. Given these circumstances, the court questions the reliability of the assertion and does not view the letter as a true recantation. In other words, the letter does not satisfy the stringent actual innocence standard articulated in *McQuiggin*.

---

Circuit's, whereas the Seventh and the Ninth Circuits do not require the exercise of due diligence, and view "new" evidence as evidence that was not "presented" at trial. *See Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011)(collecting cases).

For all of these reasons, the court concludes that the victim's statement that she "lied" cannot be said to constitute "evidence of innocence so strong that the court cannot have confidence in the outcome of the trial." *McQuiggin*, 133 S.Ct. at 1936. As such, Taylor's "actual innocence" argument does not overcome his failure to comply with AEDPA's one-year limitations period.

Finally, to the extent Taylor's untimely filing was the result of legal ignorance or a miscalculation regarding the one-year filing period, such mistakes do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

Accordingly, the court will dismiss the petition as time-barred.

## C. Pending Motion

Taylor filed a motion seeking the appointment of counsel (D.I. 19) during the pendency of this proceeding. Having concluded that the petition must be dismissed as time-barred, the court will deny the motion as moot.

## III. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In addition, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of

9

reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Taylor's petition filed pursuant to 28 U.S.C. § 2254 should be denied as time-barred. The court is persuaded that reasonable jurists would not find these conclusions to be debatable. Therefore, the court will not issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, the court will deny Taylor's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.